Mr. Justice Morris delivered
the opinion of the Court:
Samuel Strong was a contractor with the municipal authorities of the District of Columbia for the construction of various public works in the District; and out of his transactions there grew some of the most protracted and most peculiar litigations in the annals of our local tribunals. In the year 1874 he instituted two suits at common law, numbered 14,706 and 14,736, respectively, in the Supreme Court *82 of the District of Columbia, in the first of which he claimed the sum of $155,831.22 to be due to him from the District on account of a sewer constructed’ by him on Boundary street, now known as Florida avenue, in the city of Washington; and in the second of which, on account of various other contracts with the District, he claimed to be entitled to the sum of $258,384.73. The aggregate amount of his claims in both suits was $414,215.95. Soon after the institution of these two suits, Congress established a board of audit to settle claims against the District of Columbia, which had become very numerous on account of the extensive and somewhat loose and irregular transactions of the municipal authorities prior to the year 1874, and thereupon Strong withdrew or dismissed his two suits, and submitted his claims to the board of audit. The action of the board was not satisfactory to him, and he procured to have his suits reinstated in court. On March 7, 1877, the two causes were consolidated, and sent to a referee or special auditor, who on June 3, 1878, reported in favor of Strong to the amount of $32,958.41. This award was strangely disregarded by the court, which, without any formal action upon it, proceeded with a jury to try the consolidated causes. The result of this trial was a verdict and judgment in favor of Strong to the amount of $133,000. An appeal was taken from this judgment by the District of Columbia to the general term of the Supreme Court of the District; and the judgment was reversed. Upon the reversal an order was made vacating the referee’s award, and directing a new trial. The new trial, after a stubborn and most protracted contest extending over seventy-nine days, resulted, under instructions from the court, in a verdict for the defendant. But the judgment thereon rendered was, upon appeal by the plaintiff, reversed by the general term, and another trial awarded.
On May 24, 1883, in pursuance of a stipulation entered into by the parties, there was a reference of the causes to three arbitrators or referees, who reported in favor of the plaintiff Strong to the amount of $234,798.48. But on ex *83 ceptions thereto filed on behalf of the District of Columbia, the award was set aside and the reference vacated.
Thereupon, representation was made to Congress that this litigation was blocking the business of the courts; and that body, by a joint resolution adopted on July xo, 1888, and which was accepted and which, indeed, it seems was procured by the plaintiff, provided for the reference of the causes to a new board of arbitrators to be appointed by the President of the United States; and whose award, when filed in the causes, should be final and conclusive. This board, on January 11, 1889, awarded to Strong the sum of $28,357.38, with interest from November 10, 1874 — a sum, it will be noticed, not greatly different from the award of the first referee in 1878; This award, as it subsequently appeared, was entirely on account of the Boundary street sewer, which was the subject of controversy in cause No. 14,706. Nothing was allowed on the other contracts. Judgment was entered upon the award in pursuance of the joint resolution of Congress; and the litigation between Strong and the District of Columbia, which had extended over fifteen years, at last came to an end.
But a new and more varied crop of litigation now sprung up between Strong and a host of his creditors; and a wild and desperate race of diligence arose in his effort to elude them all and to take himself and the fund out of the jurisdiction, and their endeavor- to enforce their several claims agairtst it and him. It seems that for considerations good, bad and indifferent — several of them undoubtedly indifferent — he had assigned and reassigned the fund, or portions of it, and had in fact scattered such assignments broadcast over the District of Columbia. Not only to his attorneys for their services in the suits, and to those who had aided him with money to conduct his litigation — for he himself seems to have been always impecunious and to have lived upon his expectations — but to any and all persons whom he supposed to have influence with the courts, or with members of Congress, or with the Commissioners of the District of Columbia, and who offered to aid him in the prosecution of his *84 claim, he freely gave assignments of portions of the fund which he expected to realize. All these he now sought to repudiate, with the aid of a new set of assignees or associates; and his assignees sought to anticipate him in his enterprise. The judgment, like other judgments against the District of Columbia, was required to be paid from the Treasury 'of the United States; and Strong hastened to the Treasury to obtain payment. His creditors were there, or soon put in an appearance, with their assignments. Payment was stopped; and the suits now before us for adjudication were the result of the contest.
First, on January 12, 1889, which was the day immediately following the rendition of the award and the entry of judgment, Sarah Campbell, executrix of Robert Campbell, filed a bill in equity for an injunction against Strong, the District of Columbia, the Secretary of the Treasury, the Treasurer of the United States, and thirteen other persons who asserted or were assumed to have claims upon the fund. The purpose of this bill was to assert or procure a lien upon the fund and the appropriation of it to the satisfaction of a decree for $15,431.21, rendered on January 14, 1876, in favor of one Charles F. Willey against Strong on account of work done for Strong by Willey on the Boundary street sewer heretofore mentioned, and which decree had been assigned by Willey to Robert Campbell, who had furnished to Willey the bricks used by the latter in the execution of his contract with Strong.
There had been the sum of $2,458.32 paid by Strong on the decreed in' November, 1877; but the residue, with interest, was claimed to be unpaid. After answers and replication filed and testimony taken, this cause, in accordance with a practice then prevailing, was certified by the special term of the Supreme Court of the District of Columbia to the General Term of that court to be there heard in the first instance; and from that court, in which it was pending at the time of the creation of this court, it was transferred to us under the law of our organization. This is the cause which is No. 124 *85 on our docket In it, it seems, there is no specific assignment claimed of the fund or of any part of it, but only a lien in consequence of the fact that the work, for which the decree had been rendered, was part of the work for which payment had ultimately been awarded to Strong, and that Strong had delivered to Campbell orders upon the District of Columbia for payment out of the moneys coming to him, which orders, it is claimed, had been in a manner accepted by the District, but upon Strong’s strenuous objection, had afterwards been returned to Campbell unpaid.
On January 14, 1889, two days after the institution of the Campbell suit, Benjamin F. Butler, one of Strong’s attorneys in his litigation; with the District of Columbia, and who also had other transactions of a business nature with Strong, outside of his professional relations to him in those suits, instituted the proceedings which stand as No. 123 on our docket. These proceedings were begun with a bill in equity, in which Strong, the Secretary of the Treasury, the Treasurer of the United States and the District of Columbia, were made defendants, and the purpose of which was to enjoin the withdrawal of the money by Strong from the Treasury, and to enforce an alleged assignment of it to the amount .of $46,-564.49, claimed by Butler to have been made to him by Strong under date of April 3, 1885. The consideration of this assignment is stated to have been in part‘for attorney’s fees in the suits against the District of Columbia, and in part for other transactions. The bill was afterwards amended by the addition of eleven other persons who claimed or were assumed to claim an interest in the fund, as defendants. Nine of these eleven persons were also defendants in the Campbell suit; two of them were not made parties to that suit; and there were three defendants to the Campbell suit who were not made parties to this suit. .Sarah Campbell herself was not made a party to it.
In this suit of Butler against Strong and others, two of the defendants, Frank T..Browning and John Critcher, filed cross-bills, each claiming a lien upon the fund in considera *86 tion of professional services rendered by them severally to Strong, and of assignments therefor of portions of the fund to them. Browning’s assignment bore date on May 24, 1883, and was for $6,000 and 2-|- per centum additional in a certain contingency. Critcher’s assignment was for $3,000, and bore date on February 18, 1888. Browning also had a subsequent assignment confirmatoiy of the previous one.
After testimony taken in this cause, much of which was devoted to the elucidation of a bitter controversy between Butler and Strong with reference to the genuineness of certain documents introduced in evidence, the cause was, on September 30, 1892, the day before the certification of the Campbell cause, certified by the special term of the Supreme Court of the District of Columbia to the General Term of that court to be there heard in the first instance; and from that court it has been duly transferred to us.
Several months after the institution of the Butler suit, namely, on August 21, 1889, Samuel A. Peugh filed his bill in equity against Samuel Strong and the District of Columbia, in which he sought to assert a lien upon the fund in consequence of an alleged assignment of the fund to the extent of $2,500, claimed to have been executed and delivered to him by Strong on January 14, 1884. What proceedings were had in this case does not appear from any record before us. But on November 3, 1892, in accordance with the disposition made of the other causes, this cause was also certified to be heard in the General Term in the first instance, and from the General Term it was transferred to this court. It stands No. 134 on our docket.
On March 8, 1889, George E. Kirk filed his bill in equity against Strong, the District of Columbia, and nine persons claiming or who were assumed to claim, interests in the fund; and he sought to assert a lien upon the fund in consequence of seven several assignments of portions thereof to him, aggregating about $14,000, which were alleged by him to antedate those of all the other claimants and to be superior to all of them. The nine claimants who were made *87 defendants in this suit — namely, Butler, Cook, Browning, Sessions, Willey, Critcher, Murrell, Fant, and Sarah Campbell — had all been included in the Campbell suit; and eight had been made parties to the Butler suit. Differently from the others, this suit was prosecuted to a final decree in the special term of the Supreme Court of the District of Columbia, which was rendered on January 11, 1894, and by which the rights and respective priorities of the parties were adjudged in respect to the fund as follows:
1st. Paul Butler, administrator of Benjamin F. Butler, $10,000; 2d. William A. Cook, $4,300.65; 3d. George E. Kirk, $2,050; 4th. George E. Kirk, $1,025; 5th. Frank T. Browning, $7,300.65; 6th, George E. Kirk, $2,000; 7th. George E. Kirk, $2,500; 8th. George E. Kirk, $1,000; 9th. George E. Kirk, $4,000; 10th. George E. Kirk, $650; all the .amounts awarded being with interest from January ix, 1889, at such rate as should be allowed on the fund, Kirk’s .amounts, however, bearing interest antecedent from that date .at the rate of six per centum from the several dates of his .assignments, which ranged from August 23, 1877, to April 29, 1884.
No mention is made in the decree of the other claimants; and it was expressly stated that the court did not pass upon the priorities of any other parties between whom litigation was pending in the Court of Appeals, the reference, of course, being to the parties in the Campbell, Butler and Peugh suits.
From the decree in this cause Butler, Cook, Sarah Campbell and Browning appealed to this court, and their appeals are those that are numbered 298 and 299 on our docket. -
Pending the litigation, the chief litigant, Samuel Strong, ■died in April, 1889; and his personal representatives became parties to the suits, or to some of them. Gen. Butler also .died; and Paul Butler, administrator of his estate, was admitted as a party to the litigation.
After the causes had been several times called for argument in this court, and for various reasons from time to time postponed, five several persons filed their petitions in this *88 court, praying leave to intervene in the causes for their own interest, and claiming that they, some or all of them, had prior assignments and superior equities to those that had been set forth in the several suits, and that they were at all events entitled to a participation in the fund. These petitioners aré: ist. Robert Strong, claiming the whole fund under an alleged assignment to himself and a deceased brother, both being brothers of the assignor, Samuel Strong, as trustees for his own benefit and the benefit of the others mentioned in! the assignment, which bore the date of August 24, 1878; 2d. One T. Edwin Belts, claiming to be one of the beneficiaries under the assignment to Robert Strong just mentioned; 3d. Robert A. Boyd, claiming three several assignments — one for $2,000 dated May 19, 1879, and two for $5,000 each dated July 23, 1883; 4th. Edwin Sutherland, claiming $622.50 for services in stenographic reporting of testimony for Strong; and 5th. James A. Main, claiming an assignment for $1,100 under date of May 11, 1883. Answers have been filed to these petitions, or to some of them, in which their equity is denied.
Such is the condition of the litigation now before us; and from this statement it is quite apparent, notwithstanding the long time during which it has been pending and the mass of testimony that has been taken by some of the parties, that it is not yet in a condition to be finally and properly disposed of by us. We regret that we are unable to dispose of it at this time by a final decree, because it is a litigation that ought to be disposed of as summarily as possible, and not permitted to accumulate and encumber the courts as that did out of which this grew. But we have not the materials before us that would be satisfactory to ourselves or fair to all the parties for the rendition of a final decree.
Upon the rights of those who have petitioned for leave to intervene we are of course unable to pass definitely. It is very true that these petitioners do not seem to be entitled to much consideration. They seem to have slept upon their rights, if any they have, for an unreasonable time; and some *89 of the claims, at least, are very far from being above suspicion. But we have a fund in court, to some remnant of which they may be entitled; for it would almost appear as if Samuel Strong himself had lost all claim to it; and this fund and all the claims to it, it is proper to administer fully and finally, and to dispose of the whole and not merely of a part of it. Moreover, while the fund is in court undisposed of, these petitioners may be able to explain satisfactorily the delay in the prosecution of their claims, as well as possibly to establish the justice of those claims; and in the view which we are compelled to take of the litigation, apart from their petitions, it will subserve the cause of justice that they should have the opportunity of being heard in support of their several claims.
The decree in the case of Kirk against Strong and others is manifestly and confessedly incomplete. Very properly the court below in that case declined to adjudicate the rights of the parties between whom suits were pending at the time in this court; and yet without the adjudication of those rights, it is impossible to determine what value to give to the decree that was actually rendered. It might be that the rights thus left unadjudicated should be preferred over some .or all of those that were adjudicated; and if this decree were permitted to stand and we should proceed to adjudicate the other cases before us, we would probably be confronted with the insuperable difficulty of adjusting the different decrees to each other. For example, Samuel A. Peugh is not made a party to the Kirk suit. He has a suit of his own pending before us based upon an assignment that antedates one of Kirk’s assignments. There is also another assignment to Peugh, now belonging to the estate of George Mattingly, that antedates five of Kirk’s seven assignments. These are all left unadjudicated by the decree.
Moreover, the record before us in the Kirk case is manifestly incomplete, and too insufficient to enable us to pass upon the merits of the complainant’s claims or the correctness of the decree; and while, under ordinary circumstances, *90 that would be a good reason for refusing to disturb the decree, yet in a case like the present, where the proceeding is manifestly but part of a pending litigation, we cannot give to this decree the conclusive effect to which it might otherwise well be entitled. We are not to be understood as deciding that this decree is erroneous. On the contrary it may prove to be entirely right and proper in every respect. But inasmuch as it is confessedly only a partial decree, and to permit it to stand would be to interpose an obstacle to the speedy determination of the whole controversy in the manner in which we think the controversy ought to be settled, we are compelled for that purpose and with that view alone to vacate and reverse that decree.
In our opinion, all these suits should be remitted to the court below, with directions to consolidate them, and thereupon to refer them so consolidated to the auditor of that court, under such directions as to the court may seem proper, to report upon the claims and priorities of the respective parties and of those who have intervened herein by petition, leaving it to the auditor to consider not only the testimony already adduced in the several causes, but likewise such further testimony, if any, as may be adduced before him; and for such further and other proceedings as may be proper, in accordance with law and the practice of the court. This conclusion we think is justified by the fact that the parties are not the same in all the causes, and that there has not "been the opportunity for examination and cross-examination, such as is contemplated by the law. The report of the auditor may simplify what is now an incongruous mass, and certainly it can put the matter in better shape for final adjudication.

It is ordered, therefore, that the decree in the case of Kirk v. Strong and other's be vacated and reversed; and that all the causes be thereupon remanded to the Supreme Court of .the District of Columbia, to be therein proceeded with in <accordance with this opinion.

With reference to the costs of this court, the causes are not 
*91
in condition to have them adjudged jinally against any one ; .and so they will be paid by the complainants in the first instance, and will finally be taxed and adjudged as may seem just and pt'oper, with the other costs, upon the final determination of the causes.

Subsequently to the handing down of the above opinion, .a motion was made by the plaintiff in the case of Butler v. Strong, No. 123, which was allowed by the court in a supplemental opinion delivered by Mr. Justice Morris, April 20, 1894, who said :
Since the rendition of the decision in this cause, the plaintiff has filed a motion for an amendment of the order of this •court so as to require the intervenors to give security for costs, to be approved by a justice of the Supreme Court of the District of Columbia, for the payment of all costs that may be occasioned by their intervention, as a condition precedent to their right to intervene. The requirement of this motion is just and proper; and it is allowed.

The cause, therefore, when remanded, will be with directions that such security as may be deemed proper by the Supreme Court of the District of Columbia for the payment of costs by the intervenors, such as may be occasioned by their intervention, shall be reqidred of them severally by said .court as a condition of their intervention; and it is so ¿ordered.